# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
Filed: March 15, 2016

| | | |
|---|---|---|
| * * * * * * * * * * * * * | * | |
| TRENT ALVAREZ and JAMIE | * | No. 11-210V |
| ALEXANDER, as the legal representatives | * | |
| of their minor daughter, K.A., | * | UNPUBLISHED |
| | * | |
| Petitioners, | * | Chief Special Master Dorsey |
| | * | |
| v. | * | Joint Stipulation on Damages; |
| | * | Hepatitis A Vaccine; MMR Vaccine; |
| SECRETARY OF HEALTH | * | Pneumococcal Vaccine; Hemolytic |
| AND HUMAN SERVICES, | * | Uremic Syndrome ("aHUS") |
| | * | |
| Respondent. | * | |
| * * * * * * * * * * * * * | * | |

Curtis R. Webb, Twin Falls, ID, for petitioners.
Glenn MacLeod, U.S. Department of Justice, Washington, D.C., for respondent.

**DECISION**[1]

On April 4, 2011, Trent Alvarez and Jamie Alexander ("petitioners") filed a petition for compensation in the National Vaccine Injury Compensation Program on behalf of their minor child, K.A.[2] Petitioners allege that K.A. developed Hemolytic Uremic Syndrome ("aHUS") as a result of receiving the Hepatitis A ("Hep A"), the measles-mumps-rubella-varicella ("MMRV"), and the pneumococcal conjugate ("PCV") vaccines on May 5, 2008. Petition at ¶¶ 2-3.

---

[1] Because this decision contains a reasoned explanation for the undersigned's action in this case, the undersigned intends to post this ruling on the website of the United States Court of Federal Claims, in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 note (2012)(Federal Management and Promotion of Electronic Government Services). As provided by Vaccine Rule 18(b), each party has 14 days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b).

[2] The National Vaccine Injury Compensation Program is set forth in Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755, codified as amended, 42 U.S.C. §§ 300aa-1 to -34 (2012) ("Vaccine Act" or "the Act"). All citations in this decision to individual sections of the Vaccine Act are to 42 U.S.C.A. § 300aa.

1

On March 14, 2016, the parties filed a stipulation in which they stated that a decision should be entered awarding compensation. Respondent denies that the Hep A, MMRV, or the PCV vaccines caused K.A.'s alleged aHUS or any other injury. Nevertheless, the parties agree to the joint stipulation, attached hereto as Appendix A. The undersigned finds the stipulation reasonable and adopts it as the decision of the Court in awarding damages, on the terms set forth therein.

The parties stipulate that petitioners shall receive the following compensation:

a. **A lump sum in the amount of $371,152.93**, which amount represents compensation for first year life care expenses ($9,152.93) and compensation for combined lost and future earnings and pain and suffering ($362,000.00), **in the form of a check payable to petitioners, Trent Alvarez and Jamie Alexander, as guardians/conservators of K.A.'s estate, and for the benefit of K.A.**

b. **A lump sum in the amount of $23,000.00**, which amount represents compensation for past unreimbursable expenses, **in the form of a check payable to petitioners, Trent Alvarez and Jamie Alexander.**

c. **A lump sum in the amount of $2,537.25**, which amount represents reimbursement for a lien for services provided to K.A., **in the form of a check payable jointly to petitioners, Trent Alvarez and Jamie Alexander, and**

> **The Department of Human Services**
> **Personal Injury Liens Unit**
> **P.O. Box 14512**
> **Salem, OR 97309**
> **Client ID: VC701B7V**
> **Attn: Susie Smith-Taylor**

Petitioners agree to endorse this payment to the State of Oregon.

d. **A lump sum of $215.80**, which amount represents reimbursement of a lien for services provided to K.A., **in the form of a check payable jointly to petitioners and**

> **The Department of Health Services**
> **Recovery Branch – MS 4720**
> **P.O. Box 997421**
> **Sacramento, CA 95899-7421**
> **DHCS Account No.: C97389528E-VAC03**

Petitioners agree to endorse this payment to the State of California.

e. **An amount sufficient to purchase the annuity contract described in paragraph 10 of the stipulation.**

These amounts represent compensation for all damages that would be available under 42 U.S.C. § 300aa-15(a). Stipulation dated March 14, 2016, (ECF No. 143) at ¶ 8.

The undersigned approves the requested amount for petitioner's compensation. Accordingly, an award should be made consistent with the stipulation.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court **SHALL ENTER JUDGMENT** in accordance with the terms of the parties' stipulation.[3]

**IT IS SO ORDERED.**

s/ Nora Beth Dorsey
Nora Beth Dorsey
Chief Special Master

---

[3] Pursuant to Vaccine Rule 11(a), entry of judgment is expedited by the parties' joint filing of notice renouncing the right to seek review.

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
OFFICE OF SPECIAL MASTERS

| | |
|---|---|
| TRENT ALVAREZ and JAMIE ALEXANDER, as the legal representatives of their minor daughter, K.A., <br><br> Petitioners, <br><br> v. <br><br> SECRETARY OF HEALTH AND HUMAN SERVICES, <br><br> Respondent. | No. 11-210V <br> Chief Special Master Dorsey |

## STIPULATION

The parties hereby stipulate to the following matters:

1. On behalf of their daughter, K.A., petitioners filed a petition for vaccine compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10 to 34 (the "Vaccine Program"). The petition seeks compensation for injuries allegedly related to K.A.'s receipt of the Hepatitis A, Measles-Mumps-Rubella-Varicella ("MMR-V") and Pneumococcal conjugate vaccine ("PCV"), which vaccines are contained in the Vaccine Injury Table (the "Table"), 42 C.F.R. § 100.3 (a).

2. K.A. received her immunizations on or about May 5, 2008.

3. The vaccines were administered within the United States.

4. Petitioners allege that K.A. developed atypical Hemolytic Uremic Syndrome ("aHUS") as a result of her immunizations, and that she experienced the residual effects of this injury for more than six months.

5. Petitioners represent that there has been no prior award or settlement of a civil action for damages on behalf of K.A. as a result of her condition.

6. Respondent denies that the Hep A, MMR-V and/or PCV vaccination(s) caused K.A.'s aHUS or any other injury, and further denies that her current disabilities are a sequela of a vaccine-related injury.

7. Maintaining their above-stated positions, the parties nevertheless now agree that the issues between them shall be settled and that a decision should be entered awarding the compensation described in paragraph 8 of this Stipulation.

8. As soon as practicable after an entry of judgment reflecting a decision consistent with the terms of this Stipulation, and after petitioners have filed an election to receive compensation pursuant to 42 U.S.C. § 300aa-21(a)(1), the Secretary of Health and Human Services will issue the following vaccine compensation payments:

> a. A lump sum of $371,152.93, which amount represents compensation for first year life care expenses ($9,152.93) and compensation for combined lost future earnings and pain and suffering ($362,000.00), in the form of a check payable to petitioners as guardian(s)/conservator(s) of the estate of K.A. for the benefit of K.A.. No payment shall be made until petitioners provide respondent with documentation establishing that they have been appointed as the guardian(s)/conservator(s) of K.A.'s estate;
>
> b. A lump sum of $23,000.00, which amount represents compensation for past unreimbursable expenses, in the form of a check payable to petitioners, Trent Alvarez and Jamie Alexander;
>
> c. A lump sum of $2,537.25, which amount represents reimbursement of a lien for services provided to K.A., in the form of a check payable jointly to petitioners and
>
> > The Department of Human Services
> > Personal Injury Liens Unit
> > P.O. Box 14512
> > Salem, OR 97309
> > Client ID: VC701B7V
> > Attn: Susie Smith-Taylor
>
> Petitioners agree to endorse this payment to the State of Oregon.
>
> d. A lump sum of $215.80, which amount represents reimbursement of a lien for services provided to K.A., in the form of a check payable jointly to petitioners and

Department of Health Services
Recovery Branch – MS 4720
P.O. Box 997421
Sacramento, CA 95899-7421
DHCS Account No.: C97389528E-VAC03

Petitioners agree to endorse this payment to the State of California.

e. An amount sufficient to purchase the annuity contract described in paragraph 10 below, paid to the life insurance company from which the annuity will be purchased (the "Life Insurance Company").

9. The Life Insurance Company must have a minimum of $250,000,000.00 capital and surplus, exclusive of any mandatory security valuation reserve. The Life Insurance Company must have one of the following ratings from two of the following rating organizations:

a. A.M. Best Company: A++, A+, A+g, A+p, A+r, or A+s;

b. Moody's Investor Service Claims Paying Rating: Aa3, Aa2, Aa1, or Aaa;

c. Standard and Poor's Corporation Insurer Claims-Paying Ability Rating: AA-, AA, AA+, or AAA;

d. Fitch Credit Rating Company, Insurance Company Claims Paying Ability Rating: AA-, AA, AA+, or AAA.

10. The Secretary of Health and Human Services agrees to purchase an annuity contract from the Life Insurance Company for the benefit of K.A., pursuant to which the Life Insurance Company will agree to make payments periodically to petitioners, as the court-appointed guardian(s)/conservator(s) of the estate of K.A. for the following items of compensation:

a. For future unreimbursable Providence Health Plan Balance 1000 Gold Maximum-out-of-Pocket expenses, beginning on the first anniversary of the date of judgment, an annual amount of $4,000.00 to be paid up to the anniversary of the date of judgment in year 2072, increasing at the rate of five percent (5%), compounded annually from the date of judgment.

b. For future unreimbursable Providence Health Plan Balance 1000 Gold Premium expenses, beginning on the first anniversary of the date of judgment, an annual amount of

$2,256.00 to be paid up to the anniversary of the date of judgment in year 2028. Then, beginning on the anniversary of the date of judgment in year 2028, an annual amount of $3,552.00 to be paid up to the anniversary of the date of judgment in year 2032. Then, beginning on the anniversary of the date of judgment in year 2032, an annual amount of $3,564.00 to be paid up to the anniversary of the date of judgment in year 2033. Then, beginning on the anniversary of the date of judgment in year 2033, an annual amount of $3,636.00 to be paid up to the anniversary of the date of judgment in year 2034. Then, beginning on the anniversary of the date of judgment in year 2034, an annual amount of $3,720.00 to be paid up to the anniversary of the date of judgment in year 2035. Then, beginning on the anniversary of the date of judgment in year 2035, an annual amount of $3,852.00 to be paid up to the anniversary of the date of judgment in year 2036. Then, beginning on the anniversary of the date of judgment in year 2036, an annual amount of $3,972.00 to be paid up to the anniversary of the date of judgment in year 2037. Then, beginning on the anniversary of the date of judgment in year 2037, an annual amount of $4,032.00 to be paid up to the anniversary of the date of judgment in year 2038. Then, beginning on the anniversary of the date of judgment in year 2038, an annual amount of $4,116.00 to be paid up to the anniversary of the date of judgment in year 2039. Then, beginning on the anniversary of the date of judgment in year 2039, an annual amount of $4,200.00 to be paid up to the anniversary of the date of judgment in year 2040. Then, beginning on the anniversary of the date of judgment in year 2040, an annual amount of $4,248.00 to be paid up to the anniversary of the date of judgment in year 2041. Then, beginning on the anniversary of the date of judgment in year 2041, an annual amount of $4,308.00 to be paid up to the anniversary of the date of judgment in year 2042. Then, beginning on the anniversary of the date of judgment in year 2042, an annual amount of $4,332.00 to be paid up to the anniversary of the date of judgment in year 2043. Then, beginning on the anniversary of the date of judgment in year 2043, an annual amount of $4,368.00 to be paid up to the anniversary of the date of judgment in year 2044. Then, beginning on the anniversary of the date of judgment in year 2044, an annual amount of $4,392.00 to be paid up to the anniversary of the date of judgment in year 2045. Then, beginning on the anniversary of the date of judgment in year 2045, an annual amount of $4,416.00 to be paid up to the anniversary of the date of judgment in year 2046. Then, beginning on the anniversary of the date of judgment in year 2046, an annual amount of $4,476.00 to be paid up to the anniversary of the date of judgment in year 2047. Then, beginning on the anniversary of the date of judgment in year 2047, an annual amount of $4,536.00 to be paid up to the anniversary of the date of judgment in year 2048. Then, beginning on the anniversary of the date of judgment in year 2048, an annual amount of $4,620.00 to be paid up to the anniversary of the date of judgment in year 2049. Then, beginning on the anniversary of the date of judgment in year 2049, an annual amount of $4,704.00 to be paid up to the anniversary of the date of judgment in year 2050. Then, beginning on the anniversary of the date of judgment in year 2050, an annual amount of $4,812.00 to be paid up to the anniversary of the date of judgment in year 2051. Then, beginning on the anniversary of the date of judgment in year 2051, an annual amount of $4,956.00 to be paid up to the anniversary of the date of judgment in year 2052. Then, beginning on the anniversary of the date of judgment in year 2052, an annual amount of $5,124.00 to be paid up to the anniversary of the date of judgment in year 2053. Then, beginning on the anniversary of the date of judgment in year 2053, an annual amount of

$5,328.00 to be paid up to the anniversary of the date of judgment in year 2054. Then, beginning on the anniversary of the date of judgment in year 2054, an annual amount of $5,544.00 to be paid up to the anniversary of the date of judgment in year 2055. Then, beginning on the anniversary of the date of judgment in year 2055, an annual amount of $5,808.00 to be paid up to the anniversary of the date of judgment in year 2056. Then, beginning on the anniversary of the date of judgment in year 2056, an annual amount of $6,060.00 to be paid up to the anniversary of the date of judgment in year 2057. Then, beginning on the anniversary of the date of judgment in year 2057, an annual amount of $6,336.00 to be paid up to the anniversary of the date of judgment in year 2058. Then, beginning on the anniversary of the date of judgment in year 2058, an annual amount of $6,624.00 to be paid up to the anniversary of the date of judgment in year 2059. Then, beginning on the anniversary of the date of judgment in year 2059, an annual amount of $6,924.00 to be paid up to the anniversary of the date of judgment in year 2060. Then, beginning on the anniversary of the date of judgment in year 2060, an annual amount of $7,236.00 to be paid up to the anniversary of the date of judgment in year 2061. Then, beginning on the anniversary of the date of judgment in year 2061, an annual amount of $7,572.00 to be paid up to the anniversary of the date of judgment in year 2062. Then, beginning on the anniversary of the date of judgment in year 2062, an annual amount of $7,908.00 to be paid up to the anniversary of the date of judgment in year 2063. Then, beginning on the anniversary of the date of judgment in year 2063, an annual amount of $8,280.00 to be paid up to the anniversary of the date of judgment in year 2064. Then, beginning on the anniversary of the date of judgment in year 2064, an annual amount of $8,652.00 to be paid up to the anniversary of the date of judgment in year 2065. Then, beginning on the anniversary of the date of judgment in year 2065, an annual amount of $9,048.00 to be paid up to the anniversary of the date of judgment in year 2066. Then, beginning on the anniversary of the date of judgment in year 2066, an annual amount of $9,240.00 to be paid up to the anniversary of the date of judgment in year 2067. Then, beginning on the anniversary of the date of judgment in year 2067, an annual amount of $9,636.00 to be paid up to the anniversary of the date of judgment in year 2068. Then, beginning on the anniversary of the date of judgment in year 2068, an annual amount of $9,972.00 to be paid up to the anniversary of the date of judgment in year 2069. Then, beginning on the anniversary of the date of judgment in year 2069, an annual amount of $10,200.00 to be paid up to the anniversary of the date of judgment in year 2070. Then, beginning on the anniversary of the date of judgment in year 2070, an annual amount of $10,476.00 to be paid up to the anniversary of the date of judgment in year 2071. Then, beginning on the anniversary of the date of judgment in year 2071, an annual amount of $10,656.00 to be paid up to the anniversary of the date of judgment in year 2072, all amounts increasing at the rate of five percent (5%), compounded annually from the date of judgment.

c. For future unreimbursable Medicare Part B Premium and Medigap F expenses, beginning on the anniversary of the date of judgment in year 2072, an annual amount of $4,235.52 to be paid for the remainder of K.A.'s life, increasing at the rate of five percent (5%), compounded annually from the date of judgment.

d. For future unreimbursable Nutritionist expenses, beginning on the first anniversary of the date of judgment, an annual amount of $225.00 to be paid up to the anniversary of the date of judgment in year 2029. Thereafter, beginning on the anniversary of the date of judgment in year 2029, an annual amount of $150.00 to be paid for the remainder of K.A.'s life, all amounts increasing at the rate of four percent (4%), compounded annually from the date of judgment.

e. For future unreimbursable G-Tube Kit, Extension Kit and Pedia-Smart Formula expenses, on the first anniversary of the date of judgment, a lump sum of $992.00, increasing at the rate of four percent (4%), compounded annually from the date of judgment.

f. For future unreimbursable Dentist and Medication expenses, beginning on the first anniversary of the date of judgment, an annual amount of $321.10 to be paid up to the anniversary of the date of judgment in year 2026. Thereafter, beginning on the anniversary of the date of judgment in year 2026, an annual amount of $380.28 to be paid for the remainder of K.A.'s life, all amounts increasing at the rate of five percent (5%), compounded annually from the date of judgment.

g. For future unreimbursable Medication expenses, beginning on the anniversary of the date of judgment in year 2072, an annual amount of $1,704.36 to be paid for the remainder of K.A.'s life, increasing at the rate of five percent (5%), compounded annually from the date of judgment.

h. For future unreimbursable Counseling expenses, beginning on the first anniversary of the date of judgment, a lump sum of $770.00. Then, on the anniversary of the date of judgment in year 2019, a lump sum of $770.00. Then, on the anniversary of the date of judgment in year 2021, a lump sum of $770.00. Then, on the anniversary of the date of judgment in year 2023, a lump sum of $770.00. Then, on the anniversary of the date of judgment in year 2025, a lump sum of $770.00. Then, on the anniversary of the date of judgment in year 2029, a lump sum of $770.00. Then, on the anniversary of the date of judgment in year 2037, a lump sum of $770.00. Then, on the anniversary of the date of judgment in year 2047, a lump sum of $770.00, all amounts increasing at the rate of four percent (4%), compounded annually from the date of judgment.

i. For future unreimbursable Post-Operative Certified Nursing Assistant/Home Health Aide expenses, beginning on the anniversary of the date of judgment in year 2023, and annual amount of $3,080.00 to be paid up to the anniversary of the date of judgment in year 2024. Thereafter, beginning on the anniversary of the date of judgment in year 2024, an annual amount of $256.67 to be paid for the remainder of K.A.'s life, all amounts increasing at the rate of four percent (4%), compounded annually from the date of judgment.

j. For future unreimbursable Post-Dialysis Certified Nursing Assistant/Home Health Aide expenses, beginning on the anniversary of the date of judgment in year 2030, and annual amount of $5,720.00 to be paid up to the anniversary of the date of judgment in year

2035. Then, beginning on the anniversary of the date of judgment in year 2042, an annual amount of $5,720.00 to be paid up to the anniversary of the date of judgment in year 2047. Then, beginning on the anniversary of the date of judgment in year 2054, an annual amount of $5,720.00 to be paid up to the anniversary of the date of judgment in year 2059. Thereafter, beginning on the anniversary of the date of judgment in year 2059, an annual amount of $4,290.00 to be paid for the remainder of K.A.'s life, all amounts increasing at the rate of four percent (4%), compounded annually from the date of judgment.

k. For future unreimbursable Primary Care Physician Mileage, Nephrologist Mileage, Laboratory Mileage, Dentist Mileage, Emergency Room/Acute Visit Mileage, Hospital Mileage, Future Transplant Mileage, Counseling Mileage, Camp Mileage, and Dialysis Mileage expenses, beginning on the first anniversary of the date of judgment, an annual amount of $521.53 to be paid up to the anniversary of the date of judgment in year 2018. Then, beginning on the anniversary of the date of judgment in year 2018, an annual amount of $747.07 to be paid up to the anniversary of the date of judgment in year 2019. Then, beginning on the anniversary of the date of judgment in year 2019, an annual amount of $758.34 to be paid up to the anniversary of the date of judgment in year 2020. Then, beginning on the anniversary of the date of judgment in year 2020, an annual amount of $747.07 to be paid up to the anniversary of the date of judgment in year 2021. Then, beginning on the anniversary of the date of judgment in year 2021, an annual amount of $758.34 to be paid up to the anniversary of the date of judgment in year 2022. Then, beginning on the anniversary of the date of judgment in year 2022, an annual amount of $747.07 to be paid up to the anniversary of the date of judgment in year 2023. Then, beginning on the anniversary of the date of judgment in year 2023, an annual amount of $1,920.85 to be paid up to the anniversary of the date of judgment in year 2024. Then, beginning on the anniversary of the date of judgment in year 2024, an annual amount of $626.87 to be paid up to the anniversary of the date of judgment in year 2025. Then, beginning on the anniversary of the date of judgment in year 2025, an annual amount of $638.14 to be paid up to the anniversary of the date of judgment in year 2026. Then, beginning on the anniversary of the date of judgment in year 2026, an annual amount of $556.95 to be paid up to the anniversary of the date of judgment in year 2029. Then, beginning on the anniversary of the date of judgment in year 2029, an annual amount of $568.22 to be paid up to the anniversary of the date of judgment in year 2030. Then, beginning on the anniversary of the date of judgment in year 2030, an annual amount of $556.95 to be paid up to the anniversary of the date of judgment in year 2037. Then, beginning on the anniversary of the date of judgment in year 2037, an annual amount of $568.22 to be paid up to the anniversary of the date of judgment in year 2038. Then, beginning on the anniversary of the date of judgment in year 2038, an annual amount of $556.95 to be paid up to the anniversary of the date of judgment in year 2047. Then, beginning on the anniversary of the date of judgment in year 2047, an annual amount of $568.22 to be paid up to the anniversary of the date of judgment in year 2048. Thereafter, beginning on the anniversary of the date of judgment in year 2048, an annual amount of $556.95 to be paid for the remainder of K.A.'s life, all amounts increasing at the rate of four percent (4%), compounded annually from the date of judgment.

l. For future unreimbursable Dialysis Mileage expenses, beginning on the anniversary of the date of judgment in year 2030, an annual amount of $3,900.00 to be paid up to the anniversary of the date of judgment in year 2035. Then, beginning on the anniversary of the date of judgment in year 2042, annual amount of $3,900.00 to be paid up to the anniversary of the date of judgment in year 2047. Then, beginning on the anniversary of the date of judgment in year 2054, annual amount of $3,900.00 to be paid up to the anniversary of the date of judgment in year 2059. Thereafter, beginning on the anniversary of the date of judgment in year 2059, annual amount of $1,625.00 to be paid for the remainder of K.A.'s life, all amounts increasing at the rate of four percent (4%), compounded annually from the date of judgment.

At the sole discretion of the Secretary of Health and Human Services, the periodic payments may be provided to the petitioners in monthly, quarterly, annual or other installments. The "annual amounts" set forth above describe only the total yearly sum to be paid to the petitioners and do not require that the payment be made in one annual installment. The petitioners will continue to receive the annuity payments from the Life Insurance Company only so long as K.A. is alive at the time that a particular payment is due. Written notice to the Secretary of Health and Human Services and the Life Insurance Company shall be provided within twenty (20) days of K.A.'s death.

11. The annuity contract will be owned solely and exclusively by the Secretary of Health and Human Services and will be purchased as soon as practicable following the entry of a judgment in conformity with this Stipulation. The parties stipulate and agree that the Secretary of Health and Human Services and the United States of America are not responsible for the payment of any sums other than the amounts set forth in paragraph 8 herein and the amounts awarded pursuant to paragraph 12 herein, and that they do not guarantee or insure any of the future annuity payments. Upon the purchase of the annuity contract, the Secretary of Health and Human Services and the United States of America are released from any and all obligations with respect to future annuity payments.

12. As soon as practicable after the entry of judgment on entitlement in this case, and after petitioners have filed both a proper and timely election to receive compensation pursuant to 42 U.S.C. § 300aa-21(a)(1), and an application, the parties will submit to further proceedings before the special master to award reasonable attorneys' fees and costs incurred in proceeding upon this petition.

13. Petitioners and their attorney represent that compensation to be provided pursuant to this Stipulation is not for any items or services for which the Program is not primarily liable under 42 U.S.C. § 300aa-15(g), to the extent that payment has been made or can reasonably be expected to be made under any State compensation programs, insurance policies, Federal or State health benefits programs (other than Title XIX of the Social Security Act (42 U.S.C. § 1396 et seq.)), or by entities that provide health services on a pre-paid basis.

14. Payments made pursuant to paragraph 8 and any amounts awarded pursuant to paragraph 12 of this Stipulation will be made in accordance with 42 U.S.C. § 300aa-15(i), subject to the availability of sufficient statutory funds.

15. The parties and their attorneys further agree and stipulate that, except for any award for attorneys' fees and litigation costs, the money provided pursuant to this Stipulation will be used solely for the benefit of K.A. as contemplated by a strict construction of 42 U.S.C. §300aa-15(a) and (d), and subject to the conditions of 42 U.S.C. § 300aa-15(g) and (h).

16. Petitioners represent that they presently are, or within 90 days of the date of judgment will become, duly authorized to serve as guardian(s)/conservator(s) of K.A.'s estate under the laws of the State of Oregon. No payments pursuant to this Stipulation shall be made until petitioners provide the Secretary with documentation establishing their appointment as guardian(s)/ conservator(s) of K.A.'s estate. If petitioners are not authorized by a court of

competent jurisdiction to serve as guardian(s)/conservator(s) of the estate of K.A. at the time a payment pursuant to this Stipulation is to be made, any such payment shall be paid to the party or parties appointed by a court of competent jurisdiction to serve as guardian(s)/conservator(s) of the estate of K.A. upon submission of written documentation of such appointment to the Secretary.

17. In return for the payments described in paragraphs 8 and 12, petitioners, in their individual capacities and as legal representatives of K.A., on behalf of themselves, K.A., and her heirs, executors, administrators, successors or assigns, do forever irrevocably and unconditionally release, acquit and discharge the United States and the Secretary of Health and Human Services from any and all actions or causes of action (including agreements, judgments, claims, damages, loss of services, expenses and all demands of whatever kind or nature) that have been brought, could have been brought, or could be timely brought in the Court of Federal Claims, under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa-10 et seq., on account of, or in any way growing out of, any and all known or unknown, suspected or unsuspected personal injuries to or death of K.A. resulting from, or alleged to have resulted from, any of the vaccinations administered on May 5, 2008, as alleged by petitioners in a petition for vaccine compensation filed on or about April 4, 2011, in the United States Court of Federal Claims as petition No. 11-210V.

18. If K.A. should die prior to entry of judgment, this agreement shall be voidable upon proper notice to the Court on behalf of either or both of the parties.

19. If the special master fails to issue a decision in complete conformity with the terms of this Stipulation or if the Court of Federal Claims fails to enter judgment in conformity with a

decision that is in complete conformity with the terms of this Stipulation, then the parties' settlement and this Stipulation shall be voidable at the sole discretion of either party.

20. This Stipulation expresses a full and complete negotiated settlement of liability and damages claimed under the National Childhood Vaccine Injury Act of 1986, as amended, except as otherwise noted in paragraph 12 above. There is absolutely no agreement on the part of the parties hereto to make any payment or to do any act or thing other than is herein expressly stated and clearly agreed to. The parties further agree and understand that the award described in this Stipulation may reflect a compromise of the parties' respective positions as to liability and/or amount of damages, and further, that a change in the nature of the injury or condition or in the items of compensation sought, is not grounds to modify or revise this agreement.

21. Petitioners hereby authorize respondent to disclose documents filed by petitioners in this case consistent with the Privacy Act and the routine uses described in the National Vaccine Injury Compensation Program System of Records, No. 09-15-0056.

22. This Stipulation shall not be construed as an admission by the United States or the Secretary of Health and Human Services that the Hep A, MMR-V and/or PCV vaccines caused K.A. to suffer aHUS or any other injury or condition.

23. All rights and obligations of petitioners hereunder shall apply equally to their heirs, executors, administrators, successors, and/or assigns as legal representatives of K.A.

END OF STIPULATION

Respectfully submitted,

PETITIONER:

_____
TRENT ALVAREZ

PETITIONER:

_____
JAMIE ALEXANDER

ATTORNEY OF RECORD FOR
PETITIONER:

_____
CURTIS R. WEBB, ESQ.
WEBB, WEBB, & GUERRY
Attorneys at Law
155 2nd Avenue North
P.O. Box 1768
Twin Falls, Idaho 83303-1768
(208) 734-1616

AUTHORIZED REPRSENTATIVE
OF THE ATTORNEY GENERAL:

_____
VINCENT J. MATANOSKI
Deputy Director
Torts Branch
Civil Division
U.S. Department of Justice
P.O. Box 146
Benjamin Franklin Station
Washington, DC 20044-0146

AUTHORIZED REPRESENTATIVE
OF THE SECRETARY OF HEALTH
AND HUMAN SERVICES:

_____
A. MELISSA HOUSTON M.D., M.P.H., FAAP
Director, Division of Injury Compensation
Programs
Healthcare Systems Bureau
U.S. Department of Health
and Human Services
5600 Fishers Lane
Parklawn Building, Mail Stop 08N146B
Rockville, MD 20857

Dated: 3/14/16

ATTORNEY OF RECORD FOR
RESPONDENT:

_____
GLENN A. MACLEOD
Senior Trial Counsel
Torts Branch
Civil Division
U.S. Department of Justice
P.O. Box 146
Benjamin Franklin Station
Washington, DC 20044-0146
Tel: (202) 616-4122

12